# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **MELISSA H. TRAIL,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10CV00001 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **GENERAL DYNAMICS** | ) | By: James P. Jones |
| **ARMAMENT AND TECHNICAL** | ) | Chief United States District Judge |
| **PRODUCTS, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

*Richard F. Hawkins, III, The Hawkins Law Firm, P.C., Richmond, Virginia, for Plaintiff; R. Craig Wood and Gary S. Marshall, McGuire Woods LLP, Charlottesville and Richmond, Virginia, for Defendant.*

In this civil diversity case, the plaintiff alleges that her former employer, among other things, defamed her and violated Virginia's insulting words statute. I will deny the defendant's Motion to Dismiss the insulting words claim because the Complaint states a plausible cause of action.

I

In this case the plaintiff, Melissa H. Trail, asserts claims against her former employer, General Dynamics Armament and Technical Products, Inc. ("General Dynamics"), alleging malicious prosecution, defamation per se, and violation of

section 8.01–45 of the Virginia Code, also known as the insulting words statute.[1] General Dynamics has moved to dismiss the insulting words claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Trail's Complaint does not allege a prima facie case. The parties have briefed and argued their positions and the Motion to Dismiss is ripe for decision.

Under recognized principles, I will accept the facts as alleged in the Complaint solely for the purposes of the present Motion to Dismiss. The case stems from a 2008 labor strike at General Dynamics' Marion, Virginia, manufacturing facilities. The strike began in April of 2008, when employees walked out over the terms of a new collective bargaining agreement. As recording secretary for the union,[2] Trail had an active and visible role in the planning and execution of the strike.

During the first week of the strike, the union placed six-foot high signs at entrances of the firm's main plants in Marion. The signs listed the names and salaries of management employees who earned more than $100,000 per year. General

---

[1] "All words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45 (2007).

[2] The United Auto Workers/United Defense Workers of America Local 2850 represented the collective bargaining unit at the Marion facilities.

Dynamics officials quickly expressed their displeasure to union leaders and the signs were removed from the entrances.

About the same time, a union member obtained a list containing the names, salaries, and Social Security numbers of all General Dynamics employees at the Marion facilities.  The list was posted upon five strike shacks stationed outside the plants.  When General Dynamics learned of this, management asked union leaders to return the lists to the company and demanded that the union prevent further misuse of the information.  General Dynamics also contacted law enforcement about the security breach and the posting of the employees' Social Security numbers.  Soon thereafter, the Virginia State Police opened a criminal investigation into the matter.

The state police interviewed Trail after Todd Green, a human resources manager for General Dynamics, reported that employees saw Trail with the lists when she attended a little league baseball game.  When interviewed, Trail denied the allegations.

The nine-week strike ended in June 2008.  A month later, the Virginia State Police appeared to conclude the investigation—no further interviews were conducted and no arrests were made.  Yet, eight months later, police received a phone call in which a General Dynamics employee repeated the accusation that Trail had shown others the list of names and Social Security numbers during a little league game.

Police then interviewed two additional people. Twelve days later, a Smyth County grand jury indicted Trail on a felony charge of identity theft. The indictment stated that Trail had violated the law on April 16, 2008, the day Trail had allegedly possessed the list at the baseball game.

The next day, a local newspaper, the Smyth County News, erroneously reported that the grand jury had indicted Trail for "distributing the names, salaries and Social Security numbers of hundreds of General Dynamics' employees in the midst of a strike last spring." (Compl. Ex. I.) The article quoted a Virginia State Police officer who said the identifying information was posted upon strike shacks and that "the personnel information of hundreds of employees was compromised." (*Id*.) The article also quoted the officer as stating that investigators "developed information that Trail was possibly involved" in the posting of the lists on strike shacks and had "pursued evidence" that led to the indictment. (*Id*.)

General Dynamics management reacted quickly to news of the indictment. The day of the story's publication, a General Dynamics supervisor e-mailed an electronic copy of the article to five non-union employees. The next morning, two of these employees gave subordinates copies of the article, which the subordinates then distributed to people who entered two of the firm's Marion plants. The company also suspended Trail without pay. In a letter, Green told Trail she would remain

suspended "until the final disposition of the case." (Compl. Ex. K.)  Green informed union officials that Trail could return to work if she was "exonerated on all charges."[3] (Compl. Ex. L.)

The criminal case against Trail ended when the Smyth County prosecutor obtained a nolle prosequi of the charge.  The union contacted General Dynamics about Trail's return to work, but officials stated Trail could not return because the nolle prosequi permitted the charge to be refiled.

A few days later, an assistant Commonwealth's attorney for Smyth County called General Dynamics on Trail's behalf.  The prosecutor told Green that his office would not bring additional charges against Trail and that his office would seek a formal dismissal order, which would bar further prosecution of Trail on the charge. General Dynamics responded by firing Trail.

In a September 15, 2009 letter, Green told Trail that the dismissal did not exonerate Trail.  The nolle prosequi, the letter stated, was only "for the convenience of the prosecutor. . .[and] the prosecutor may reinstate [the charges] at any time." (Compl. Ex. N.)  Green wrote that the company had conducted its own investigation and had "obtained evidence that" demonstrated Trail possessed the list of names and

---

[3]  Trail was indicted on a single charge.  Green's correspondence, however, indicated that Trail faced multiple charges.

Social Security numbers, and that Trail had shown the list to others. (*Id.*) Trail's acts, according to the letter, "were unlawful because they violated Virginia Code § 59.1-443.2, which prohibits the 'intentional communication of another individual's social security number to the general public.'" (*Id.*) Green wrote that Trail's acts violated company ethics rules and that her "unlawful and improper actions negatively affected [her] relationship to [her] job, [her] fellow employees and supervisors." (*Id.*)

## II

Under Federal pleading standards, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but it does require that a pleading have more than bald allegations unsupported by facts. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). At this stage in the proceedings, the court must take all factual allegations as true. *Iqbal*, 129 S. Ct. at 1950. Under the pleading standards announced in *Twombly* and *Iqbal,* a complaint must contain enough facts to state a claim that is "plausible on its face," meaning more than the speculative possibility of the defendant's liability. *Iqbal*, 129 S. Ct. at 1949.

The new pleading standards, however, do not require that a complaint meet the burden of proof required for summary judgment. As the Court noted in *Twombly*, "[a]sking for plausible grounds to infer" the existence of a claim "does not impose a probability requirement at the pleading stage." 550 U.S. at 556. Even under the heightened pleading requirements, a complaint filed in federal court does not have to allege all the facts that could permit the plaintiff to obtain relief.

*Iqbal's* pleading standard means that Trail's Complaint must allege sufficient facts that permit for the plausible inference that General Dynamics uttered words "which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01–45.

Virginia's insulting words statute has been interpreted as being "'co-extensive with the common law action for defamation.'" *Dwyer v. Smith*, 867 F.2d 184, 195-96 (4th Cir. 1989) (quoting *Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987)). Virginia courts have applied the insulting words statute to claims stemming from either verbal or written statements. *Williams v. Garraghty*, 455 S.E.2d 209, 212 (1995); *Darnell v. Davis*, 58 S.E.2d 68, 70 (Va. 1950); *Chaffin v. Lynch,* 1 S.E. 803, 807 (Va. 1887); *Mills v. Kingsport Times-News*, 475 F. Supp. 1005, 1007 (W.D. Va. 1979) (citing *Carwile v. Richmond Newspapers, Inc.,* 82 S.E.2d 588 (Va. 1954)). Unlike libel or slander, however, an insulting words

claim does not require publication of the statement in question. Rather, the statement may be actionable if it is uttered only to the plaintiff. *Potomac Valve*, 829 F.2d at 1284 n.9.

The Virginia Supreme Court has held that it will apply the "plain meaning of clear and unambiguous statues" such as section 8.01-45. *Allen & Rocks, Inc. v. Dowell*, 477 S.E.2d 741, 742 (Va. 1996). Because of this, an insulting words claim must include phrases that tend "to violence or breach of the peace." *Id.* at 743. In *Allen & Rocks*, the Virginia Supreme Court held that there was insufficient evidence that an employer's negative comments about an former employee tended toward violence. *Id.* at 742–43. The court's holding indicates that mere criticism about an employee's conduct may be insufficient for a claim of insulting words. *Id.* But, *Allen & Rocks'* narrow, fact-specific holding does not serve as a blanket protection for all statements made during the termination of an employee.

The Virginia Supreme Court has repeatedly held that false accusation of criminal conduct, even when stated in writing, may constitute insulting words under the statute. *Zayre of Va., Inc. v. Gowdy*, 147 S.E.2d 710, 713 (Va. 1966); *Darnell*, 58 S.E.2d at 70. *Zayre* and *Darnell* did not consider statements made within the context of employment disputes. Nevertheless, the Virginia Supreme Court's holdings in

these cases demonstrate that false accusations of a crime are "insulting and [tend] to violence and breach of the peace." *Zayre*, 147 S.E.2d at 713.

Under *Iqbal*, to establish a prima facie case, the Complaint here must allege enough facts to allow for the reasonable inference that General Dynamics, through its employees' actions, uttered words, which "tend to violence or breach the peace." The Complaint does this.

Based upon the facts alleged, a reasonable fact finder could infer that the mass distribution of the erroneous newspaper article and Green's termination letter constituted statements that could lead to violence. This inference is plausible because of the context in which the acts occurred—a seventeen-month period spanning from the strike's commencement to Trail's termination.

The facts alleged establish how during this period antagonism and resentment developed between management and striking workers due to the union's public disclosure of officials' salaries and the posting of sensitive personnel information. The Complaint allows for the reasonable inference that tensions between Trail and company officials also escalated as the firm publicized Trail's indictment via mass distribution of the news article; suspended Trail without pay; and ultimately, terminated Trail in a letter that accused her of unethical and criminal activity despite reassurances from the prosecutor that Trail would not face criminal charges. Based

upon these facts, there are "plausible grounds to infer" that the company's utterances to Trail could lead to a breach of the peace. *Twombly*, 550 U.S. at 556.

General Dynamics argues that I should dismiss the insulting words claim because the alleged acts do not involve a "face-to-face" confrontation.[4] (Mot. to Dismiss ¶ 5.) This interpretation of the statute is too strict. The Virginia Supreme Court has declined to read additional requirements into the law. The court has held that it will only apply the "plain language" of the statute, which simply requires that the utterances in question "tended to violence or breach of the peace." *Allen & Rocks*, 477 S.E.2d at 743. Further, the Virginia Supreme Court has upheld verdicts in which a jury decided statements were insulting when the words were in writing and did not involve a face-to-face confrontation. *See Williams*, 455 S.E.2d at 218; *Chaffin*, 1 S.E. at 807–08. Thus, requiring that a claim for insulting words include a face-to-face confrontation would constitute an erroneous interpretation of the statute's plain language and Virginia Supreme Court precedent.

---

[4] At oral argument, General Dynamics conceded that to fall under the statute, the statement in question could be made either orally or in writing.

## III

For the foregoing reasons, it is **ORDERED** that the defendant's Motion to Dismiss is DENIED.

ENTER: March 25, 2010

/s/ JAMES P. JONES
Chief United States District Judge